UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOANN MASON,                    )        CASE NO. 1:06-CV-1566
                                )
            Plaintiff,          )
                                )
      v.                        )        MAGISTRATE JUDGE MCHARGH
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )        <u>**MEMORANDUM OPINION & ORDER**</u>
                                )
            Defendant.          )

        This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 11).

The issue before the undersigned is whether the final decision of the Commissioner of Social

Security (the "Commissioner") denying Plaintiff Joann Mason's application for a Period of

Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 416(i) and 423, and Supplemental Security Income Benefits under Title XVI of the Social

Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore,

conclusive.

        For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. <u>INTRODUCTION & PROCEDURAL HISTORY</u>

        The instant action is Plaintiff's second attempt to appeal the denial of her applications for

benefits.  On June 30, 2003, Plaintiff Joann Mason ("Plaintiff" or "Mason") applied for a Period

of Disability and Disability Insurance Benefits and Supplemental Security Income Benefits

alleging that she became disabled on November 1, 1998.  (Tr. 9, 47-49).  Mason's applications

were denied initially and upon reconsideration.[1]  (Tr. 9).  Thereafter, Mason requested a hearing

before an administrative law judge to contest the denial of her applications.  (*Id*.)  The Social

---

[1] These documents were not available for inclusion in the record before the Court.  *See* (Tr. 1).

Security Administration granted Plaintiff's request and a hearing was convened on December 12, 2005 before Administrative Law Judge Fenton Hughes ("ALJ Hughes").  (*Id.*; Tr. 209-12).  On February 10, 2006, ALJ Hughes denied Plaintiff's applications, (Tr. 209-12), and later, the Appeals Council denied Mason's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner (Tr. 213-15).  Mason then sought judicial review of the Commissioner's decision before this Court.  (Doc. 1).  But, because the Commissioner could not locate ALJ Hughes's written decision, nor the recording of the hearing, the undersigned remanded the case back to the Social Security Administration in order for it to conduct a second hearing and issue a new decision.  (Doc. 12-13).  Subsequently, on February 26, 2007, the Appeals Council vacated ALJ Hughes's decision and ordered that a second hearing be scheduled immediately.  (Tr. 222).

Plaintiff's second hearing was held before Administrative Law Judge Mark Carissimi (the "ALJ" or "ALJ Carissimi") on August 29, 2008.  (Tr. 540-81).  Plaintiff was present with her attorney and testified.  (*Id.*)  At that time, Plaintiff amended her alleged onset date to November 1, 2002.  (Tr. 9).  Also appearing and testifying were Medical Expert, Dr. Frank Cox (the "ME"), Vocational Expert, Ted Macy (the "VE"), and Plaintiff's mother.  (Tr. 540-81).  On December 1, 2008, ALJ Carissimi issued his written decision finding that Plaintiff was not disabled under the Social Security regulations.  (Tr. 9-19).  In the opinion, the ALJ applied the five-step sequential analysis,[2] and determined that Mason retained the ability to perform work

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

which existed in significant numbers in the national economy.  (*Id.*)  Following this denial, Plaintiff sought review of ALJ Carissimi's decision from the Appeals Council.  (Tr. 592). However, on September 10, 2010, the Appeals Council denied Mason's request, thereby making ALJ Carissimi's decision the final decision of the Commissioner.  (Tr. 582-83).  Thereafter, on February 11, 2011, Defendant sought to reopen the instant action so that it could file the certified transcript of Plaintiff's administrative record and its Answer to Plaintiff's Complaint.  (Doc. 14). The undersigned granted Defendant's motion on February 15, 2011.

Mason, born on October 1, 1962, was forty-five years old on the date of her hearing before ALJ Carissimi.  (Tr. 544).  Thus, she was considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. § 404.1563(c).  Plaintiff completed high school and earned her diploma.  (Tr. 544).  Mason has past experience working as a day care provider and as a file clerk.  (Tr. 576-77).

---

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II.  <u>MEDICAL EVIDENCE</u>

This appeal centers upon the ALJ's consideration of the medical opinions issued by two physicians: Plaintiff's long-time treating physician, Dr. Lloyd Cook, and the consultative examiner, Dr. Franklin Krause.  In November 1998, Plaintiff suffered a slip and fall injury at work.  (Tr. 130).  Although x-rays of her hips and lumbar spine revealed normal results, Mason consistently complained of pain and tenderness in her back following this injury.  (Tr. 123-31).  There was a significant gap in Plaintiff's treatment for this ailment, but when she presented to Dr. Cook in June 2003 she again complained of lower back pain.  (Tr. 118).  Upon examination, Dr. Cook noted that Mason's musculoskeletal exam revealed a full range of motion and hip flexion and extension.  (*Id*.)  He also observed mild paraspinal tenderness in her lower lumbosacral region and discomfort in her quadriceps area.  (*Id*.)  He diagnosed Mason with chronic back pain secondary to myofascial syndrome, hypertension and gastroesophageal reflux disease, and prescribed Ultracet, Elavil, Zantac, Maxzide and home exercise.  (Tr. 118).  On October 4, 2004, Dr. Cook penned a letter detailing these diagnoses and the medications which he prescribed for Plaintiff.  (Tr. 115).  In addition to his other findings, the letter indicated that he also diagnosed Mason with irritable bowel syndrome and noted that she had suffered from depression in the past.  (*Id*.)  Dr. Cook authored a similar letter in July 2005.  (Tr. 182).

Plaintiff continued to complain of back pain in the latter portion of 2005.  (Tr. 184, 187, 190-93).  When Plaintiff presented to Dr. Cook on November 14, 2005, she rated her pain as being an 8 on a scale of 1 to 10.  (Tr. 191).  Dr. Cook noted that she had tenderness in her peri-lumbar region, but that she appeared to be in no acute distress.  (*Id*.)  On December 15, 2005, Plaintiff presented to Dr. Cook again complaining of persistent low back pain.   (Tr. 378).  Dr. Cook commented that she had paraspinal tenderness in her lumbar region and a decreased range of motion on a passive range of motion test.  (*Id*.)  He also noted that Mason tested positive on a

straight leg lifting test.  (*Id.*)  He indicated that her lumbar myofascial syndrome now had radicular type symptoms, and scheduled an MRI of her spine.  (*Id.*)  Plaintiff's MRI revealed mild degenerative changes at L5/S1 and L4/5.  (Tr. 358).

At some point, Dr. Cook completed a Residual Functional Capacity ("RFC") questionnaire assessing Mason's physical functional abilities.[3]  (Tr. 197-200).  In it, Dr. Cook restricted Mason from lifting or carrying more than 25 pounds, or from standing or walking for more than three hours in an eight-hour workday, for no more than one-hour increments.  (Tr. 197, 200).  He also limited Plaintiff from sitting more than one to two hours at a time, for more than four hours per eight-hour workday.  (*Id.*)  Dr. Cook placed no restrictions on Plaintiff's ability to handle, feel, see, hear, or speak.  (Tr. 198). But, he opined that her abilities to push, pull, bend and reach were moderately limited, although she retained the ability to crawl frequently.  (*Id.*; Tr. 200).  He commented that these restrictions were caused by Plaintiff's complaints of chronic back pain.  (Tr. 198, 200).  Dr. Cook did not place any environmental restrictions on Plaintiff's ability to work.  (Tr. 198)  In his opinion, Mason's impairments would render her unemployable for a period of 12 months or longer.  (Tr. 200).

Dr. Cook also completed an RFC assessment evaluating Plaintiff's mental functional capacity.  (Tr. 456).  He indicated that Mason was "not significantly limited" in the following areas:  remembering locations and work-like procedures; understanding and remembering simple and detailed instructions and carrying out very short and simple instructions.  (*Id.*)  However, he opined that she was "moderately limited" in ten areas of mental functioning, including: carrying out detailed instructions; maintaining attention and concentration for extended periods;

---

[3] Defendant alleges that the RFC assessment was completed on December 27, 2005, but the Court did not see where this date was referenced on the document.  Plaintiff appears to agree with Defendant's assertion.

performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others.  (*Id.*)  Finally, he noted that Mason was "markedly limited" in her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (*Id.*)

In March 2006, Plaintiff was hospitalized for four days due to worsening depressive symptoms.  (Tr. 461).  Doctors diagnosed her as having a major depressive episode and prescribed Cymbalta and other medication.  (*Id.*)  Upon discharge Plaintiff was pleasant and indicated that the medication helped her feel better.  (*Id.*)  She was instructed to attend a follow up appointment the next day.  (*Id.*)  Later, in February 2007, Mason presented to the hospital complaining of chest pain.  (Tr. 480).  But, testing and x-rays revealed that Plaintiff's heart was stable.  (Tr. 469-79).

During an appointment with Dr. Cook in June 2007, Plaintiff complained of pain in her left leg.  (Tr. 422).  Dr. Cook found that Plaintiff had some mild swelling in her left knee and

"some tenderness with deep palpation in the popliteal fossa." (*Id.*)  He ordered an x-ray of Mason's left knee and prescribed medication and range of motion exercises. (Tr. 423).

On February 14, 2008, Plaintiff presented to consultative examiner, Dr. Franklin Krause, for an examination of her physical functional abilities. (Tr. 428-40).  Dr. Krause noted that she presented to the appointment with a quad cane and moved slowly with agonizing steps. (Tr. 429).  Mason told Dr. Krause that she suffered from severe pain in her back. (*Id.*)  The doctor also noted that it took Plaintiff a while to relax sufficiently to conduct range of motion and muscle strength testing, and that Mason's flexion of the knees and hips were limited by back pain. (*Id.*)  He commented that her back pain severely limited her activities of daily living, although there was no objective evidence of reflex asymmetry or atrophy, and that there could be significant emotional overlay. (*Id.*)

Based on his observations, Dr. Krause opined that Mason was precluded from performing any lifting, carrying, climbing, balancing, stooping, kneeling, crouching or crawling. (Tr. 435, 438).  With regard to sitting, standing or walking, Dr. Krause indicated that Plaintiff could perform each task for no more than a total of 50 minutes in a workday, and for no more than 30 minutes at one time. (Tr. 436).  He further commented that Plaintiff's cane was medically necessary and that her gait could not be sustained without it. (*Id.*)  Additionally, he opined that Mason could only reach, handle, finger, feel, push or pull for 1/3 to 2/3 of the workday, and that she should never work around unprotected heights, moving mechanical parts, humidity or wetness, dust, odors or fumes, extreme cold or heat, vibrations, or operate a motor vehicle. (Tr. 437, 439).

## III.  ALJ's RULING

Following the completion of the administrative hearing, ALJ Carissimi ruled that Plaintiff was not disabled.  (Tr. 9-19).  At step one of the sequential analysis, the ALJ held that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2002. (Tr. 11).  At step two, the ALJ stated that Mason suffered from two severe impairments: degenerative disc disease of the lumbar spine and major depressive disorder/adjustment disorder. (Tr. 11-12)  However, at step three, ALJ Carissimi found that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12-13).  Before moving to step four, the ALJ assessed Plaintiff's RFC to work.  (Tr. 14-17).  ALJ Carissimi indicated that Mason retained the RFC to perform a limited range of light work involving no more than simple, routine tasks and superficial interaction with co-workers and the public.  (Tr. 14).  Because of this finding, at step four, the ALJ ruled that Plaintiff was unable to return to any of her past relevant work.  (Tr. 17-18).  Nevertheless, at step five, ALJ Carissimi concluded that Mason's RFC allowed her to perform other work which existed in significant numbers in the national economy.  (Tr. 18-19). Specifically, the ALJ stated that Plaintiff could work as a bench assembler, wire worker, or as an electronics worker.  (Tr. 19).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

8

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See* *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See* *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.  Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See* *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)*.*  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See* *Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See* *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

## VI.  ANALYSIS

Plaintiff attacks the ALJ's ruling on three grounds.  Mason's first assignment of error alleges that the ALJ failed to articulate a valid basis for rejecting the opinions of her treating physician.  Next, Mason submits that ALJ Carissimi did not state a sufficient basis for

discrediting her testimony.  Finally, Plaintiff challenges the ALJ's ruling that there was work existing in the national economy which she could perform, arguing that this finding was based upon the testimony of the VE in response to a hypothetical question which inaccurately described Plaintiff's limitations.

### 1.  Medical Opinion Evidence

### A.  Treating Physician

Plaintiff maintains that ALJ Carissimi violated the treating source rule by failing to articulate "good reasons" for his rejection of Dr. Cook's opinions stated within his RFC assessments.  It is well-recognized that an ALJ must give special attention to the findings of the claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the notion that physicians who have a long-standing treating relationship with an individual, are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 416.927(d)(2).  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.  However, even when a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor

10

which may support or contradict the opinion.  20 C.F.R. § 416.927(d)(2)-(7).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.*  An ALJ's failure to adhere to this doctrine may necessitate remand.  *Wilson*, 378 F.3d at 545.

The Court finds that the ALJ's analysis of Dr. Cook's opinions complied with the treating source doctrine.  ALJ Carissimi determined that Dr. Cook's findings were not deserving of controlling weight because they were not supported by his treatment notes nor the evidence as a whole.  As a preliminary matter, the Court notes that contrary to Plaintiff's assertion that ALJ Carissimi rejected Dr. Cook's findings, the ALJ credited a portion of the physician's findings.  The ALJ indicated that he attributed "some weight" to Dr. Cook's opinions regarding Mason's ability to lift and carry, and to understand, remember and carry out simple instructions.  Notably, ALJ Carissimi limited Mason to lifting or carrying no more than 20 pounds occasionally or 10 pounds frequently, whereas Dr. Cook indicated that Mason could lift or carry up to 25 pounds.  The ALJ also limited Plaintiff to work involving no more than simple, routine tasks.

Notwithstanding, the ALJ assigned "less weight" to Dr. Cook's assessment of Plaintiff's ability to sit, stand, walk and to perform other postural functions, stating that the doctor's opinions were not supported by his treatment records or by the evidence as a whole.  With regard to these restrictions, the ALJ specifically referenced treatment notes from 2003 and 2005 where Dr. Cook indicated that there was no evidence that Plaintiff suffered from motor or sensory deficits or any abnormalities, and that despite her complaints she did not appear to be in any acute distress.  The ALJ also highlighted that although Plaintiff used a quad cane to walk, none of Dr. Cook's records showed that he had prescribed the cane for Plaintiff, but that the record did

show that Dr. Cook had advised Mason to adhere to a regular exercise regimen.[4]  Additionally, with regard to the limitations Dr. Cook placed on Plaintiff's mental functional capacity, ALJ Carissimi explained that he did not give these findings full weight because "there [wa]s no evidence that Dr. Cook provided mental health treatment [to Plaintiff], other than to prescribed [sic] anti-depressants, nor [wa]s there any indication that Dr. Cook ha[d] any expertise regarding mental health issues."  (Tr. 16).

Plaintiff asserts many challenges to the ALJ's stated reasons for discounting Dr. Cook's opinions, all of which fall short of warranting remand.  Plaintiff submitted that the ALJ's evaluation of Dr. Cook's findings amounted to the ALJ "playing doctor" and constituted as the ALJ impermissibly substituting his opinion for that of a medical professional.  The undersigned disagrees.  The Social Security Act gives the ALJ the ultimate responsibility of determining a claimant's RFC.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); 20 C.F.R. § 404.1546(c).  While it is true that an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence", *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006), "an ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."  *Coldiron*, 391 F. App'x at 439.  The ALJ did not substitute his opinion for that of Dr. Cook, but rather considered the fact that Dr. Cook's opinions were not substantiated by his treatment notes or the evidence as a whole – an opinion which was also expressed by the ME.  To suggest that it was improper for the ALJ to evaluate Dr. Cook's records to determine whether they supported his findings would turn the treating

---

[4] The undersigned's discussion of the lack of evidence proving that Dr. Cook prescribed a cane for Plaintiff, and the ALJ's indication that that Plaintiff was capable of performing some degree of exercise are included in the Court's discussion of the ALJ's credibility determination.

physician rule on its head.  The rule implicitly requires ALJ's to consider whether a treating source's opinion is supported by objective medical evidence in order to determine whether it is deserving of controlling weight.

Nevertheless, even accepting Plaintiff's argument, which we do not, the ME – who is a doctor—reviewed Dr. Cook's findings and reached the same conclusion as the ALJ.  The ME testified that he could see "virtually no significant objective findings" to support the numerous diagnoses offered by Dr. Cook.  (Tr. 566).  Nor did the ME find any objective evidence to sustain the limitations Dr. Cook placed on Mason's ability to walk, stand or sit. (Tr. 571).  Although the ALJ did not overtly refer to the ME's opinion in his discussion of how he analyzed Dr. Cook's findings, the Court may consider this, and any other evidence in the record, to determine whether the ALJ's opinion is supported by substantial evidence.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  In the instant matter, the ME's testimony regarding the lack of objective evidence supporting Dr. Cook's restrictions on Plaintiff's capacity to sit, stand and walk bolsters the ALJ's analysis of this issue.

Plaintiff attempted to discredit the ME's testimony by arguing that the ME also "played doctor" by putting his own interpretation on Dr. Cook's treatment notes, and by suggesting that the ME's limited view of the evidence could not outweigh the opinions of Dr. Cook gained over his 17 years of treating Plaintiff.  Because the ME is a board certified internist, there is no basis for Mason's claim that he "played doctor".  Plaintiff did not object to the ME's qualifications to testify at the hearing, and therefore cannot now successfully argue that the ALJ was unqualified to interpret Dr. Cook's treatment notes.  *Koller v. Astrue*, No. 2:10-284-DCR, 2011 WL 5301569, at *3 (E.D.Ky. Nov. 3, 2011).  Nor has Mason come forward with any case law indicating that the length of a physician's treatment relationship with the claimant can

independently validate that opinion such that any contrary medical opinion is of no import. Instead, the regulations provide that the length of time in which the treating physician has treated the claimant is but one of several factors an ALJ should consider when determining how much weight to attribute to the doctor's opinion.  Accordingly, Dr. Cook's 17-year treating relationship with Mason alone does not *per se* undermine the ME's conclusions.  Though Plaintiff argues that the opinions of the consultative examiner reinforced Dr. Cook's findings, the Court will later explain why it was proper for the ALJ to also discount those opinions.

Mason also took issue with the treatment notes the ALJ cited to undermine the limitations Dr. Cook offered regarding Plaintiff's ability to sit, stand and walk.  Plaintiff noted that the ALJ referenced a treatment note from June 2003 to discredit the opinions Dr. Cook provided in the physical RFC evaluation he completed in December 2005.  Plaintiff adds that while the ALJ also referred to the doctor's treatment note from November 2005, the ALJ failed to mention Dr. Cook's treatment notes from December 15, 2005 – the same month Dr. Cook completed the RFC assessment.  Dr. Cook's treatment notes from the December 15, 2005 appointment indicate that Plaintiff had paraspinal tenderness in the lumbar region, decreased range of motion, and positive straight leg testing on both legs.  Mason argues that because this treatment note was written more close in time to when Dr. Cook completed his physical RFC assessment, the ALJ should have considered it to determine whether the doctor's opinion had support in the record.

Though Dr. Cook's treatment notes from Plaintiff's December 15, 2005 visit provide some degree of support for the conclusions stated in his assessment, Plaintiff has not shown how this evidence reinforced Dr. Cook's opinion that these impairments would have rendered Plaintiff disabled for a period of 12 months or more.  For example, during the visit Dr. Cook prescribed Plaintiff Neurontin, a pain medication, but, just three months later, he discontinued

Plaintiff's prescription of this medication and advised her to continue taking Motrin and to use relaxation techniques.  (Tr. 377-78).  More significantly, this treatment record was part of the record reviewed by the ME, and its inclusion did not persuade the ME that Dr. Cook's notes supported his RFC findings. Neither does the ALJ's omission of the December 15, 2005 treatment note signify that the ALJ did not consider this piece of evidence, as an ALJ is not required to cite to every piece of evidence he or she contemplated in reaching a decision.  *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

Mason next claims that the ALJ erred in failing to credit Dr. Cook's findings regarding Plaintiff's mental health when he concluded that these findings were not based on any expertise. Mason purports that Dr. Cook gained expertise in mental health issues by way of the courses he attended during medical school and through his practical experience as a doctor.  Be that as it may, the Court rejects Plaintiff's argument.  The regulations advise the ALJ to consider the physician's area of specialization in determining how much weight to give the opinion.  20 C.F.R. § 416.927(d)(5).  Regardless of Dr. Cook's curriculum in medical school, or whatsoever practical experience he has gained through his tenure as a physician, Plaintiff has not alleged or submitted any evidence showing that Dr. Cook *specialized* in the treatment of mental health issues.  Had the ALJ completely rejected Dr. Cook's opinions on this basis, the undersigned may have agreed with Plaintiff that such a ruling was improper.  *See Price v. Comm'r of Soc. Sec.*, No. 1:08-CV-15, 2009 WL 973496, at *12 (S.D.Ohio Apr. 19, 2009) (ruling that the ALJ's decision to reject the treating physician's opinion solely because the doctor was not a mental health professional violated the treating source rule); *see also Moreland v. Astrue*, No. 08-90-GWU, 2009 WL 735776, at *5 (E.D.Ky. Mar. 18, 2009) (holding that a treating source's opinion "may not simply be rejected because of lack of specialization.").  However, the ALJ did

completely disregard Dr. Cook's opinions in this area based on his lack of specialization; instead, ALJ Carissimi limited Mason to simple, routine work, a finding consistent with Dr. Cook's mental RFC assessment.

### B. Consultative Examiner

Plaintiff also challenges the ALJ's decision to give less weight to the opinion of Dr. Franklin Krause, the consultative examiner who evaluated Plaintiff on behalf of the Bureau of Disability Determination. Mason submits that the ALJ discounted Dr. Krause's opinion on improper grounds. ALJ Carissimi explained that he assigned less weight to Dr. Krause's opinions because they appeared to be based upon Mason's subjective complaints and her presentation at the consultative examination, rather than on objective evidence. The ALJ's determination was based upon the testimony of the ME who concluded that the only support for Dr. Krause's opinions were Mason's subjective complaints.

Mason's objections to the weight assigned to Dr. Krause's opinions are not well-taken. First, the undersigned notes that Plaintiff's objection is partly based upon a misreading of the record. In discussing his analysis of Dr. Krause's opinion, the ALJ pointed out that during a visit to the emergency room in February 2007, hospital records indicated that Plaintiff had no difficulty walking. Citing to page 402 of the transcript, Plaintiff argues that the hospital records actually stated that she was completely immobile. But, Plaintiff misread the evidence. In rating Plaintiff's mobility, the hospital assigned Plaintiff a score of "4" indicating that she had "no limitations" in mobility; not that she was "completely immobile" as Mason maintains.[5]

---

[5] Although the penmanship of the record is somewhat difficult to decipher, a full reading of the document clearly shows that the hospital believed Plaintiff to have no limitations with mobility. The hospital rated Plaintiff's abilities in six areas (Sensory Perception, Moisture, Activity, Mobility, Nutrition and Friction & Shear) from scores of "1" to "4". (Tr. 402) One can easily see that Mason received a score of "4" in Sensory Perception, Moisture and Activity, and a score

Plaintiff also accused the ALJ of misconstruing a different hospital record regarding Plaintiff's ability to walk.  ALJ Carissimi contrasted Dr. Krause's findings with hospital records indicating that Plaintiff had no difficulty walking.  Mason submits the ALJ misconstrued the evidence because the hospital records actually indicated that she responded negatively to the question of whether she had *started* to experience difficulty with walking or climbing stairs within *recent* months.  *See* (Tr. 404).  Mason purports that because she had *started* to experience problems with walking *years* before her hospital visit, the records do not undermine her assertion that she had difficulty walking.  But, Plaintiff's explanation is contradicted by the records themselves.  In a "falls assessment" form completed by the hospital, it omitted any notation of Plaintiff having any functional mobility issues when specifically asked to consider whether she had unsteady gait, or appeared wobbly, wavering or weak.  (Tr. 401).  In addition, several other records from the hospital illustrate that the hospital staff did not observe Plaintiff to have any pain or problems with walking.  (Tr. 401-05).  Accordingly, these records support the ALJ's determination.

Second, the Court rejects Plaintiff's suggestion that the ruling set forth in *Johnson v. Commissioner of Social Security*, 652 F.3d 646, 652 (6th Cir. 2011), is controlling in this case.  Plaintiff cites to *Johnson* to infer that it was inappropriate for the ALJ to discount Dr. Krause's opinions because they appeared to be based upon Plaintiff's subjective complaints.  (Pl.'s Br. at 5).  Although in *Johnson* the Sixth Circuit stated that "pain is by definition a somewhat subjective matter", it did so in dicta, and the Court was examining the ALJ's evaluation of opinions offered by one of the claimant's treating sources.  *Johnson v. Comm'r of Soc. Sec.*, 652

---

of "3" in Nutrition and Friction & Shear.  These scores would total 18 points.  Plaintiff's total score was 22.  (*Id.*)  Therefore, Plaintiff must have received a score of "4" (i.e. "no limitations") in the area of Mobility.

F.3d 646, 652 (6th Cir. 2011).  While the degree of one's pain is inherently subjective, this Circuit has consistently held that "subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'"  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (*citing* 42 U.S.C. § 423(d)(5)(A)).  Therefore, a claimant's statements regarding his or her pain cannot alone establish one's entitlement to disability benefits.  *See id*.  Rather, as discussed below, this circuit employs a two-part test to determine whether a claimant's pain is disabling. 20 C.F.R. § 416.929(a); *Rogers*, 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994)

In *Johnson*, the Sixth Circuit criticized the ALJ's treatment of the treating physician's opinion because *inter alia* the doctor's opinion *was* supported by objective evidence, the doctor had examined the claimant over 22 times in a two-year period, and was a specialist in the area for which the claimant was seeking treatment.  *Johnson*, 652 F.3d at 652.  In contrast, Dr. Krause is not a treating source, neither has Mason alleged that he was a pain specialist. Furthermore, the ME concluded that the objective evidence in the record did not support the limitations set forth by Dr. Krause, and that they appeared to be based solely upon Plaintiff's subjective complaints.  The facts at issue are therefore distinct from those in *Johnson*, and the ALJ's evaluation of Dr. Krause's opinions was sound.

## 2. Plaintiff's Credibility

While the ALJ is tasked with the responsibility of evaluating the credibility of witnesses, the adjudicator is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247.  Instead, Social Security Ruling 96-7p requires the ALJ to ensure that his credibility finding is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; SSR 96-7p. This circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. § 416.929(a); *Rogers,* 486 F.3d at 247; *Duncan,* 801 F.2d at 853-54; *Felisky,* 35 F.3d at 1039-40. First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers,* 486 F.3d at 247. Second, if such an impairment exists, the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work according to the factors listed in Social Security Ruling 96-7p.[6] *Id.*

Mason contends that the ALJ failed to properly evaluate the credibility of her testimony pursuant to the factors set forth in Social Security Ruling 96-7p. Mason submits that ALJ Carissimi considered some, but not all, of these factors. More specifically, Plaintiff maintains that the ALJ failed to consider the types of treatment and medication that she took to relieve her symptoms. She also argues that the ALJ failed to specify which of her symptoms he found to be less credible.

Plaintiff failed to provide the Court with any case law demonstrating that the ALJ was required to explicitly state how each of these factors impacted his decision. In fact, Sixth Circuit case law suggests the opposite. In *Bowman v. Chater,* the Court announced that it is not always necessary for an ALJ to conduct an item-by-item analysis of each of these factors in every case. No. 96-3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (Table). Nor did Mason explain

---

[6] These factors include:  the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Rogers,* 486 F.3d at 247; *see Felisky,* 35 F.3d at 1039-40; *see also* SSR 96-7p.

how the types of treatment and medication she took would have changed the ALJ's view of her credibility in a positive way.  While the ALJ's credibility findings "must be sufficiently specific", *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.  *Id*.; *see Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).  In other words, this standard prevents the ALJ from making arbitrary rulings or findings based upon the ALJ's unfounded notions.

ALJ Carissimi's assessment of Plaintiff's statements is supported by the record evidence and the ALJ provided sufficient reasons to support his ruling.  For example, the ALJ noted that Plaintiff failed to demonstrate that her use of a quad cane was medically necessary.  ALJ Carissimi highlighted that Plaintiff did not show that Dr. Cook ever prescribed this cane for her, nor did any of his treatment notes document Plaintiff's use of a cane.  Instead, Plaintiff was only documented as using a cane when she presented to Dr. Krause for the consultative examination.  Because Plaintiff bore the responsibility of proving that she was disabled, the lack of evidence showing that her cane was medically necessary undermined her claims regarding her ability to perform postural tasks.  *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to benefits.").  Additionally, the ALJ observed that Dr. Cook had advised Plaintiff to engage in a regular exercise regimen.  Though Plaintiff contends that this regimen only consisted of a "stretching program", the fact that the doctor prescribed Mason to participate in this activity, at least to some extent, suggests that he believed Plaintiff to be able to perform some level of physical activity, however limited.  The ALJ also explained that Plaintiff's limited daily activity level was self-imposed rather than medically-based as Dr. Cook never indicated that Plaintiff's impairments restricted her daily activities.  The sum of the reasons provided by the ALJ were

sufficient to uphold his credibility determination and are entitled to great deference.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

3.  VE's Testimony

ALJ Carissimi presented two hypothetical questions to the VE.  The first hypothetical described an individual having the same characteristics and RFC as the ALJ indicated in his written opinion.  (Tr. 577).  In response, the VE identified three jobs that such an individual would be able to perform.  (Tr. 578-79).  The ALJ's second hypothetical question described a person with the same RFC as indicated in the first hypothetical but added that the person would be off task 20 percent of the time.  (Tr. 579).  The ALJ stated that he was including this variation based upon the mental RFC assessment offered by Dr. Cook.  (*Id*.)  In response, the VE testified that such an individual would not be able to be gainfully employed.  (*Id*.)  Plaintiff contends that the ALJ should have accepted the VE's testimony in response to the second hypothetical because it most accurately described Plaintiff.

In this circuit, it is well-established that a vocational expert's testimony only provides substantial support for an ALJ's decision when the testimony is elicited in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Yet, an ALJ is under no duty to incorporate a claimant's unsubstantiated complaints into his hypothetical question posed to the VE.  *Griffith v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts. In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." ) (internal

citations omitted).  Here, the ALJ reasonably discounted Plaintiff's assertion that her mental impairments caused her to be off task 20 percent of the time.  As previously discussed, the ALJ stated sufficient reasons for not fully crediting the mental limitations imposed by Dr. Cook. Although Mason contends that her behavior at the consultative examination and her mother's testimony both substantiate her claims of significant mental limitations, the ALJ did not credit this evidence, and Plaintiff has not pointed to any *objective* evidence to support her claims. Accordingly, the ALJ was free to omit these restrictions from the hypothetical question he posed to the VE.  *See Griffith*, 217 F. App'x at 429.   Accordingly, the VE's response to the ALJ's second hypothetical was not controlling.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  February 29, 2012.